THE LAND GRANT RAILWAY AND TRUST COMPANY, AND THE UNION PACIFIC RAILWAY COMPANY, SOUTHERN BRANCH, v. THE BOARD OF COMMISSIONERS of DAVIS COUNTY.

1. CONTRACT—*Railroads, Bonds.* A county, by voting to subscribe for stock in a railway company and to issue bonds in payment therefor, does not thereby create a contract between the county and the railway company for that purpose.

2. ——— And it makes no difference that the vote of the county is to subscribe for the stock and issue the bonds upon certain conditions, which conditions the railway company afterwards performs.

3. TENDER OF STOCK, *Effect of.* Where stock has not been subscribed for, and no express contract is made by the county to subscribe therefor, the county is not bound to issue the bonds upon tender of the stock by the railway company to the county.

*Original Proceedings in Mandamus.*

THE plaintiffs filed a petition or relation, showing, among other facts, that on the 3d of July, 1867, the Board of Commissioners of Davis county, upon a petition of the citizens, submitted, in pursuance of the statutes of the State, to the electors of said county, the question of issuing $165,000 of county bonds, to bear seven per cent. interest, to assist in building the Union Pacific Railway, Southern Branch. The bonds were to be payable in thirty years, and were to be issued in compliance,

substantially, with certain conditions set forth in the notice or proclamation for the election, and copied in the opinion of the court herein. The election was held on the 15th of July, 1867, after due legal notice, and the proposition was adopted.

The plaintiffs allege that the railway company made a literal compliance with the following conditions imposed on it: 1. The road was begun at Junction City within the year. 2. The road has not only been completed ten miles ready for the rolling stock, which would entitle the railway company to half the bonds; and also, ten other miles ready for the rolling stock, so as to make twenty miles in all; but it has been completed and in operation over one hundred miles. 3. The company substantially complied with the condition to complete the road through Davis county, and have now over one hundred miles of road finished and in operation.

The U. P. R. Co., S. B., after the election of July 15, 1867, tendered the stock, and demanded the issue of the bonds, which was refused. The said company, in November, 1867, assigned the bonds to the Land Grant Railway and Trust Company. The county officers having, on demand, refused to issue the bonds, a peremptory writ of mandamus is prayed for, to compel the issue thereof.

*James Grant*, for the plaintiffs:

1. Has the Legislature of Kansas power under the constitution to authorize counties and towns to issue bonds to aid in building railroads? The Constitution, Art. 3, § 1, confers the legislative power of the State on the Senate and House of Representives. Sec. 21 of the same article authorizes the Legislature to confer upon tribunals transacting county business, such powers of local legislation as it shall deem expedient.

CONSTITUTION, ART. 12, § 5 : " Provision shall be made by general law, for the organization of cities, towns and villages, and their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, shall be so restricted as to prevent the abuse of such power." ART. 11, § 5 : " For the purpose of making public improvements, the State may contract public debts." SEC. 8 : " The State shall never be a party in carrying on any works of internal improvements."

That the Legislature has the constitutional power to authorize counties, towns, and cities to issue bonds to aid in building railroads has been decided in most of the States : *Augusta Bank v. Augusta*, 49 Me., 507; *Bridgeport v. Housatonic R. Co.*, 15 Conn., 475; 18 N. Y., 38; 24 Barb., 446; 51 Barb., 312, 320; *Sharpless v. Mayor*, 21 Pa., 122, 147, 188; 11 Penn. St., 61; *Goddin v. Crumps*, 8 Leigh, 120; 3 Grattan, 247; 22 Cal., 379; 13 Cal., 175; 23 Ga., 65; 21 Ga., 275; 28 Texas, 19; 10 Richardson, 491; *Taylor v. Newbern*, 2 Jones Eq., (N. C.,) 141; *Stein v. Mayor*, 24 Ala , 591; *Strickland v. Miss. R. R.*, 21 Miss., 209; *R. R. v. McDonough*, 8 La. An., 341; 11 id., 629, 649; *Cotton v. County Commissioners*, 6 Florida, 610 : *Nichols v. Nashville*, 9 Humphrey, 252; 1 Sneed, 637; *Talbot v. Dent*, 9 B. Monroe, 526; 13 B. Monroe, 1, 26; 2 Metcalf, 56; 1 Ohio State, 77, 105; 8 id., 394; 15 Indiana, 395; *Ryder v. Alt. & S. Co.*, 13 Ill., 516; 19 Ill., 406; 24 Ill., 75; *City of St. Louis v. Alexander*, 23 Missouri, 483; *Clark v. Janesville*, 10 Wis., 136, 195; *Price v. Foster*, 4 Harr., (Del.,) 479; *Butcher v. Atchison*, 2 Kas., 454; 3 Kas., 104; 21 Vermont, 30; *Dubuque & P. R. Co. v. Dubuque Co.*, 4 G. Greene, 1; 5 Iowa, 15; 6 id., 265, 304.

The Supreme Court of the United States has held such

bonds constitutional, directly or indirectly, in the following cases: *Aspinwall v. Com'rs of Knox Co.*, 21 Howard, 542; *Guelpke v. Dubuque*, 1 Wallace, 75, 272, 291, 384; 2 id., 310; 3 id., 93, 294, 327, 652; 4 id., 35, 273, 471; 6 id., 166, 210, 514; 7 id., 175, 313; 8 id., 575.

The following cases hold the contrary doctrine: *Stokes v. Scott Co.*, 10 Iowa, 166; *State v. Wapello*, 13 Iowa, 388, 411; 26 Iowa, 243; 27 Iowa, 35. And a recent case in Michigan.

The courts of Iowa and Michigan argue that railway corporations are private, not public corporations, and therefore the State Legislature can not authorize counties to aid them. There is one answer to this logic, which was presented to the Iowa court, to which no reply has been or can be made: If railway corporations are private corporations, where is the warrant found for the authority universally exercised, of *condemning the right of way, and taking private property* for their own uses? The position assumed that they are private, not public corporations, is untrue in the nature of things, the uses and privileges for which they are created, and the long-ago and repeated adjudication of courts of this country, that they are corporations created for public benefit and governed and controlled as such: 17 N. H., 47. There is no constitutional *limitation* of the power to "public purposes;" but the legislative power is limited only by the judgment of the legislature as to its expediency. 5 Paige C. R., 137; 18 Cal., 234; Sedg. on Cons. L., 512, 513.

2. It is argued that there is no subscription, therefore no contract, and no obligation. It does not lie in the mouth of these officers to say there is no contract. It is immaterial whether the instrument by which public faith is pledged is in terms a contract, or in form a legislative

enactment. In either case it is equally a contract within the meaning of the constitution. 2 Beasley, 81.

Suppose the Railroad Company had in writing agreed to begin the work and complete it in two years, and upon such completion were to be paid the bonds for stock? Such an agreement is a *unilateral contract*, like an offer of a reward for doing anything, or the agreement of an insurance company to pay a certain sum upon the perfoimance of certain conditions, and the happening of a loss; or, where the obligor's covenants are dependant in the performance of some act by the obligee.

" The policy," says Judge Beck, 26 Iowa, 50, " which is the foundation of this action, though a *unilateral* contract in form, contains covenants of the assured as well as the underwriters and mutual agreements of both parties. Some of these covenants on the part of the assured are in the nature of warrantees and conditions precedent; others are in the nature of obligations imposed by the conditions limiting or measuring the liability of the underwriters. The covenants of the insurers are mostly, if not all, dependent on the obligations or covenants of the insured, expressed or implied in the policy. The policy though subscribed only by the underwriters, is evidence of the contract entered into by both parties, and binds both. Contracts of this character, binding the obligor upon conditions to be performed by the obligee, but subscribed only by the obligor, are not uncommon. Those for the sale of real estate are often in this form. The language used to express the idea that the obligor is not bound to perform his covenants, until the conditions imposed on the other party are performed, or, in other words, the obligor's covenants are dependent, is usually a recital of the conditions which are to be performed by

the obligee." See also 2 Pars. Mer. Law, 404, note 2 and cases cited. "But the obligation of the assured differs from that of the underwriter. No action can be maintained against the former" (the obligee) "for the breach of any of the conditions contained in the policy. Although the policy may have been signed and accepted by the assured, he will not be liable for the premium unless he choses to have the risk commence."

We think these distinctions just, and peculiarly applicable to the case at bar. These counties, (Davis and Coffey,) instead of authorizing subscriptions like other persons, by their vote agreed to pay so many bonds for so much stock, upon the performance of a condition which saved from risk and secured them all the benefits of a railroad, without the peril of an absolute subscription and loss, if the enterprise failed before the performance of these conditions. They are required by common sense, the foundation of all law, to fulfill the condition subsequent.

3. It has been suggested that this writ will not lie. It is said that the act authorizing this vote was repealed by the general statutes of 1868. This subscription was voted under chapter 24, laws of 1866, an act to amend "an act to authorize counties and cities to issue bonds to railroad companies." The first section provides that the board of commissioners *may* subscribe to the stock, and *may* issue bonds bearing seven per cent. interest, in payment of full paid stock, etc., but no such bonds shall be issued until the question is submitted to a vote, etc. If a majority of the votes cast at such election shall be in favor of issuing such bonds, the board of county commissioners *shall* issue the same. Laws of 1866, p. 72; Chap. 23 of Genl. Stat. of 1868, pp. 203, 204, authorizes

the same thing, in substance; and chapter 119, § 6, page 1128, provides that the repeal of former acts affects no act done or right acquired or accrued under former laws; and § 8 declares that "the provisions of the general statutes, so far as they are the same as former laws, shall be construed to be a continuation of the former laws, and not new enactments."

The general statutes also contain an act approved 25th February, 1868, page 392, which provides, § 1, that whenever a majority of the persons voting at any election called by the county board, have heretofore voted in favor of subscribing stock and issuing bonds to any railroad company, the board, etc., may subscribe for the stock and issue bonds to pay therefor, whether such elections have been in compliance with the statutes or not. This provision, § 4, to apply to all elections held prior to 21st January, 1868.

So far from there being any repeal of the act of 1866, it is not only re-enacted and continued in force by the general statute in relation to the continuance of former laws, but there is a special law to cover this very case.

4. It is objected that the act says the board of commissioners "may" issue the bonds, but does not compel them to do so. Where a statute declares that a public officer or public body may have power to do an act which concerns the public interest or the rights of third parties, "may" means "shall," and the execution of the power may be insisted on as a duty. 3 Hill, 612; 4 Wallace, 435, and authorities cited.

"When an act amending a city charter says that the city council *may*, if it believe that the public good and the best interests of the city require it, levy a tax to pay

its funded debt, a mandamus will lie at the suit of judgment creditors to compel it." 5 Wallace, 705.

5. The Gen. Stat. of 1868, p. 766, § 688, give to this court the power to issue writs of mandamus to any inferior tribunal, corporation, *board* or person, to compel the performance of a duty specially enjoined by law.

The duty to issue these bonds upon demand made and performance of condition, the only remaining question, is, did the railroad company *substantially* comply with the condition of the vote authorizing the bonds? Certainly there was a substantial compliance with everything essential to entitle the railway company to these bonds.

The public duty to the county, and the duty of public officers to a third party, the railway corporation, being totally neglected, the occasion and right to the suit is perfect and complete.

*McClure & Humphrey, Clough & Wheat,* and *Shannon & Shannon,* for the Board of Commissioners:

1. The Land Grant Railway and Trust Company is a corporation created by the laws of Penn.; it is empowered to exercise the franchises granted and transact business in any State or Territory, *except the State of Pennsylvania.*

A corporation can have no legal existence out of the sovereignty where created. It must dwell in the state of its creation, and cannot migrate to another. Ang. on Corp. §§ 161, 273; 13 Peters, 519, 588; 14 Peters, 60, 122, 293; 1 Redf. on R. p. 57, *note m*; 3 Redf., 42; 4 Kas., 453; 20 Ind., 492.

If the Land Grant Railway and Trust Company is not a legal corporation it cannot sue, or make contracts, in the State of Kansas.

2. The Articles of Association of the Union Pacific Railway Company, Southern Branch, were filed in the

office of the Secretary of State, September 25, 1865, under the act "for the incorporation and regulation of railroad companies," being chapter 44 of the laws of 1865. The company was required by § 27 of said act to commence the *construction* of its road within one year after filing its articles.

The company has forfeited its right to the county bonds by a failure to begin work *bona fide* within the time limited. Ang. & A. on Corp. § 542; 32 Penn. St., 22, 25; 12 Mich. 527.

3. The U. P. R. Co., S. B., filed its articles of association for a road "*via* Clark's Creek," through Davis county; the diagram filed with the Secretary of Interior for a withdrawal of the lands granted to said company by acts of Congress, indicated the route up *Davis Creek*, a branch of Clark's creek. Since the vote of the people of Davis county was taken, (July 15, 1867,) the route has been changed, and the road constructed up Lyons Creek, making a variation of about eight miles from the location indicated by the diagram and charter at the time the vote was taken.

The articles of association state as the ultimate object of the enterprise, the construction of a railroad to New Orleans in the State of Louisiana. The agreement provides for building a road to Fort Smith and Preston in the State of Texas.

The company cannot depart from the general route prescribed in their charter; Laws of 1865, ch. 44, § 11. And such is the general rule. 4 Abb. N. Y. Digest, p. 651; par. 65, and authorities referred to; 6 id, p. 488, par. 26; Ang. & Ames on Corp. § 538.

4. The election mentioned in plaintiff's petition was held under Chapter 12, Laws 1865, pp. 41, 42, as amended

by chap. 24, Laws 1866, pp. 72–74.) Said law and its amendments were expressly repealed by §§ 1 and 2 of chap. 119 of the General Statutes, which took effect on the 31st of October, 1868; and impliedly repealed by § 51, ch. 23, p. 203, and the other sections therewith connected.

The election, or vote to subscribe for stock, did not constitute or form *a contract* between the county and the railroad company; and after the repeal of said law of 1865, and its amendments, it was not the duty, in any event, or on the happening of any contingency, for said county, or of the commissioners thereof, to subscribe to the capital stock of said railroad company.

The railroad company was no party to the election, and has not, by itself or any assignee, any more right to insist upon the execution of the power thus delegated, than it would have in case an individual were to authorize an agent to subscribe for stock in the road, and the agent should refuse to exercise the power for his principal. 22 Illinois, 156; 12 B. Monroe, 150; 4 G. Greene, 42, 152; 20 Ind., 493; 1 Redf. on Rail., 57, note 10; 22 Howard, 378; 13 Barbour, 443, 450; 13 Peters, 513.

At most, the votes cast at the election could amount to no more than a *proposition* from the county; 14 Allen, 242; 41 Ill., 394; 4 Wheaton, 225; and the repeal of the law operated as a withdrawal of such proposition before acceptance, and the commissioners have not the power now to make the subscription in behalf of the county. 22 How., 378; 12 B. Mon., 144, 150; 27 Penn. St., 389, 403; 4 Kas., 489.

Again, as the election and proposition were all on the side of the county, there was no contract, as the railroad company was not *bound to accept;* and until acceptance,

notification thereof, etc., it was void for want of mutuality in the matter of obligation. 18 Barbour, 315, 317; 4 Kas., 385; 7 Watts, 48; 21 Wendell, 138, 141; 12 Johnson, 190, 397; Chitty on Con., 9, note 2; 8 Mass., 271; 21 Ill., 370; 22 N. J., 508, 510.

The whole proceedings respecting the *election* were irregular, as shown by plaintiffs' petition. *Two* commissioners only ordered the election, and at a *special* meeting; the proclamation or notice was by the sheriff, and not by the board of commissioners; *sixty* days' notice of the election was not given. The proceedings are void unless all the prerequisites of the law are shown to have been complied with. 13 Wis , 439; 19 Wis., 280, 293; 20 Wis., 298; 17 How., 225; 23 N. Y., 449, 457; 40 Barb., 574; 38 Ill., 48; 2 Kas., 128; 12 Iowa, 153; 13 Ohio St., 311; 5 Dana, 581; 8 Blackf., 476, 583.

It is necessary for the plaintiffs to show, and they have failed to show or even allege, the amount of capital stock taken by all the subscribers to be so much as required by law to authorize an assessment on the shareholders, before they can recover against a party because of any supposed liability to pay for shares in the railroad company. 3 Kas., 55; 39 Maine, 571; 5 Ohio St., 276. And they must also show that the railroad company was authorized to construct the road mentioned in the petition; 30 Ill., 421; otherwise their acts in that respect would be illegal.

5. It is shown by plaintiffs' petition that there has not been any subscription made to the capital stock of said railroad company by or for the county. Until the subscription is actually made there is no contract; and a *mandamus* cannot be granted to compel the commissioners to issue the bonds. *Aspinwall v. Com'rs of Daviess*

*Co.*, 22 Howard, 365; 13 Barb., 438; 12 B. Monroe, 144; 22 Ill., 147; 2 Kas., 155; 4 Kas., 379.

6. The plaintiffs themselves show that the U. P. R. Co., S. B., has forfeited its charter. Sec. 27, ch. 44, L. of 1865, required said railroad company, as it was organized thereunder, to commence work within one year after filing its articles of association with the Secretary of State, and provided that in default thereof, the corporation should become, and be, dissolved. As the articles of association were filed in September, 1865, and the election was held in the summer of 1867, the contract providing for commencement of the work was made in November, 1867, it is evident that the year mentioned in said § 27 elapsed before any work was done in compliance with said section. We submit, said statute has the force to at once dissolve the corporation for such default. If so, or if it is only liable to be dissolved, of course it could not, after the lapse of such year, either claim against these defendants, or transfer any right to the Trust Company to compel the counties to take stock in a corporation so situated. 32 Penn. St., 22, 32; 39 id., 337.

7. A railroad company is a private corporation—a voluntary organization for private gains, and the enhancement of the pecuniary condition of its controlling members is its chief object and its usual accomplishment: 13 Iowa, 389; 26 Iowa, 243, and recent cases decided in Michigan and Wisconsin.

Whatever benefit may chance to come to the public is, so far as concerns the object of the corporation and the intent of those who organize it, an incidental and unintentional fall of manna, and besides, it must be fully

paid by each member of the community, each time that he may chance to partake of it.

The legislature of Kansas has no power to authorize counties to become *stockholders* in railroad companies. Const., Art. 11, §§ 1, 4, 5, 6, 7, 8.   *The State, ex rel, v. Com'rs of Wapello*, 13 Iowa, 389.

8. Counties are mere creatures of law, and have no powers, except such as are conferred on them by the State.   By § 8 of Art. 11 of our Constitution, the State is forbidden to be a party to the carrying on of any work of internal improvement.   Whatever a county does under the laws of the State, it does as an instrument of the State.   18 Wend., 70; 10 Wis., 257; 21 Penn. St., 181.

The State could not itself take stock in the Railroad Company; and it has no power to authorize a part or local subdivision thereof so to do.   What cannot be done directly, from defect of power, cannot be done indirectly. 10 Wheaton, 50; 1 Ohio St., 94, 97, 101.

The opinion of the court was delivered by

VALENTINE, J.: In this action (which is an original proceeding in mandamus, commenced May 26th, 1870,) the plaintiffs, the Land Grant Railway & Trust Company and the Union Pacific Railway Company, Southern Branch, (now Missouri, Kansas & Texas Railway Company,) seek to compel the defendants, the Board of County Commissioners of Davis county, to subscribe to the capital stock of the said Union Pacific Railway Company, Southern Branch, to the amount of one hundred and sixty-five thousand dollars, and to issue in payment therefor an equal amount of the bonds of said Davis county, and deliver them to the said plaintiffs.

We have already decided in the case of the Land

Grant Railway & Trust Company vs. the Board of Commissioners of Coffey county, that the said Land Grant Railway & Trust Company have no legal capacity to trrnsact any kind of business in Kansas, and therefore it follows that this action must be dismissed as to the said Land Grant Railway & Trust Company.

Whether the said Union Pacific Railway Company, Southern Branch, may proceed as the sole plaintiff, without making a new application for a writ of mandamus, we are not asked to decide. We shall therefore consider this action, as though commenced by the Union Pacific Railway Company, Southern Branch, alone.

On the 15th day of July, 1867, the people of Davis county voted to subscribe to the capital stock of the Union Pacific Railway Company, Southern Branch, to the amount of one hundred and sixty-five thousand dollars, and issue in payment therefor an equal amount of the bonds of said county, upon the following conditions:

1. A vote in favor of subscribing for stock is not a contract.

"1. That one-half of the bonds shall be issued upon the completion of the road, ready for the iron, ten miles from the commencement thereof—and none before; and that the other half shall be issued on the completion of the other half, ready for the rolling stock, making twenty miles from the starting point at Junction City.

" 2. That the said road shall be commenced at Junction City, within one year from the date of the election.

" 3. That it shall be completed through Davis county within two years from the date of the election.

" 4. That said bonds shall not issue in case money or other aid is hereafter received by said Company, from the United States government.

" 5. That the county reserves the right to purchase the bonds, at any time after issue, at the market value."

We will assume, for the purpose of this argument, that all of the foregoing conditions were fullfilled, so that the County Commissioners of said county could have subscribed for said stock, and issued said bonds, if they had so chosen. But said Commissioners never did subscribe for said stock, and never agreed to subscribe for the same; and the Railway Company never asked them to subscribe, until about the commencement of this suit.

The questions arising in this case are—1: Was the vote of the people of Davis county of itself, a *contract* between the county and the Railway Company, which the Railway Company can enforce? And if not—2: Was said vote of itself, a proposition to the Railway Company which the Railway Company could accept and make binding on the county? And if so, must the acceptance be a formal acceptance in writing, or a verbal acceptance, and when must the acceptance be made; or could the Railway Company accept the proposition by simply complying with the conditions of said vote? But if there was no contract between the County and the Railway Company, then—3: Did the County Commissioners by virtue of said vote, owe a duty, to subscribe for said stock, to any one, which they could be compelled to perform, or had they a discretion in the matter; and if they did owe such duty, to whom did they owe it; to the Railway Company or to the people of Davis county, and if not to the Railway Company, then is the Railway Company entitled to a writ of mandamus, to compel them to subscribe for said stock?

The nature of a contract is pretty clearly defined in

the case of *The State, ex rel., v. Barker,* 4 Kas., 385. A contract is "the agreement of two competent parties, about a legal and competent subject-matter, upon a mutual legal consideration, with a mutuality of obligation." (1 O. St., 657.) Taking this definition of a contract to be correct, it is .clear that no contract was ever made between the county of Davis and the Railway Company. No agreement was ever made by either party, and neither party was ever bound.

It seems to be, partially at least, admitted by the plaintiffs, that the vote alone, of the people of Davis county, 2. Performance of did not create a contract between the county certain acts or conditions by and the Railway Company. But it is claimed the railroad company, not that the vote was of itself a proposition to a contract. the Railway Company, which the Railway Company accepted by performing the conditions of the vote, and thereby a contract was created between the Railway Company and the county, and binding upon the county.

But the people of counties do not act in their primary capacity in making contracts. They act only through their legally constituted agents. It is the commissioners of the county only that are authorized to subscribe for stock in a railroad company, and not the people of the county, (laws of 1866, page 72, 73;) and a railway company cannot contract with a county in any way, except through the county commissioners.

The plaintiffs claim that this transaction is analogous to the case where a person offers a reward for the recovery of stolen property, or for some other such purpose. But there are at least two very clear distinctions. A. makes a proposition to the whole world, that he will pay one hundred dollars reward to the person who shall return to him his stolen horse. B. accepts the proposition (im-

pliedly at least) and returns the horse. Here is a contract binding on A. But suppose A. authorizes his agent C. to make the proposition; but C. refuses to do so, and the proposition is never made; but notwithstanding that no proposition is ever made, B. returns the horse—is A. liable for the hundred dollars? Or suppose that A. offers a reward to B. for building a house on B's own land, and just such a house as B. wants, and just such a house as B. intends to build, whether the proposition is made or not; and B without ever accepting the proposition of A. (expressly,) builds the house—is A. liable?

In this case the people of Davis county did not make any proposition to the railway company, but simply authorized their agents, the county commissioners, to make a proposition to said company, to subscribe for stock in the company, provided the company should build their road through Davis county, a thing which it must be presumed the company intended to do, whether the stock was subscribed or not, as the corporation was created and organized among other things for that express purpose, long before said vote was had.

Suppose a railroad company is organized with a capital stock of three hundred thousand dollars, for the purpose of building a railroad from the town of A. to the town of B. and one of the counties through which the road is located, without the express consent of the railroad company, votes to subscribe for three hundred thousand dollars of stock in said company, when the road shall be completed; and the company proceeds under their charter and builds the road; is the company bound to allow the county to subscribe for said stock, which is all there is, and to deliver over to the county their charter, their franchises, and all their property? Suppose the company

in the meantime had sold a portion of their stock to individuals, a half of it, or the whole of it, so that the company could not deliver to the county the three hundred thousand dollars of stock; what then? And suppose that the stock had advanced, and the bonds depreciated in value, so that the stock was worth the most—would the railway company then be bound? And if for any reason there is no contract to bind the railway company, is there any contract that can bind the county? As a general proposition, (with but one exception that I now think of, and that is where a person of full age contracts with a minor,) a contract to be binding on either party must be binding on both. Those who may desire to pursue this question further, are referred to the following cases: 22 Howard, 365, 378, 379: 12 B. Monroe 144, *et seq.:* 22 Ills., 147, 153, *et seq.*; 18 Barb., 317, *et seq.*; 21 Wend., 139 *et seq.*

We do not suppose that the voluntary tender of the stock by the railroad company, at or before the making **3. ——and tender of stock does not change the case.** of the request upon the commissioners to subscribe therefor, and to issue the bonds of the county in payment thereof, in anywise changes the case. It is our opinion that there never was any contract between the county and the railway company; and therefore, as a necessary consequence, the county commissioners, who are the agents and the representatives of the county, and not of the railway company, owe no duty to the railway company; and as a further consequence the said commissioners will not be compelled on any application of the railway company to subscribe for said stock.

The writ of mandamus is refused.

All the Justices concurring.