### McMahan *v.* Morrison and Others.

Where the Legislature gives its consent to the consolidation of existing corporations, the effect is to dissolve the former corporations, and at the same instant to create a new corporation, with property, liabilities and stockholders derived from the old, upon such terms and conditions as may be prescribed by the act of consolidation.

A corporation may be dissolved by a surrender of its franchises and the acceptance of them by the Legislature.

A precedent debt constitutes a valuable consideration for a conveyance.

A creditor of one of the former corporations who takes a judgment on his debt against the consolidated company, can not enforce his judgment against real estate of the old company conveyed to *bona fide* purchasers before the recovery of his judgment.

The owner of property can sell it and give a good title to a *bona fide* purchaser, as against his creditors, at any time before such creditors have acquired a lien.

*Thursday,
May 30.*

APPEAL from the *Wayne* Circuit Court.

Perkins, J.—On *April* 13, 1854, " *The Cincinnati, Newcastle and Michigan Railway Company*," " *The Cincinnati, Logansport and Chicago Railway Company*," and " *The Cincinnati, Cambridge City and Chicago Short Line Railroad Company*," consolidated into a new corporation, styled " *The Cincinnati and Chicago Railway Company*." As the Legislature, by an act, had given its consent to such consolidation, the effect of it, under the act and terms of consolidation, was a dissolution of the three corporations named, and, at the same instant, the creation of a new corporation, with property, liabilities and stockholders derived from those then passing out of existence. A corporation may be dissolved by a

surrender of its franchises, and the acceptance of them by the Legislature. *Lauman* v. *The Lebanon, &c. Co.*, 30 Penn. St. Rep. 42. At the date of this consolidation, the plaintiff, *McMahan*, had a suit pending against *The Cincinnati, Cambridge City, &c. Co.*, to recover a demand that company owed him. The same company, at the same time, owned a piece of real estate that had been conveyed to it by one *John Hawkins*. But *McMahan*, on the substitution of the new company as defendant, in place of *The Cincinnati, Cambridge, &c. Co.*, took his judgment against the new company, viz., *The Cincinnati and Chicago Co*. This judgment he obtained on *April* 14, 1856.

Two years before the rendition of this judgment, however, *The Cincinnati and Chicago Company*, having succeeded to the property of *The Cincinnati and Cambridge Co.*, as well as to that of the others consolidating, had conveyed the *Hawkins* lot, above mentioned, to *Morrison, Blanchard & Co.*, to pay a debt due to them, originally, from *The Cincinnati, Logansport, &c. Co.*

*McMahan* now contends that this lot is liable for the debts which were owing by *The Cincinnati and Cambridge Co.*, at the time of the consolidation, the lot being then the property of that company; and hence, he sues *Morrison, Blanchard & Co.*, the present owners of the lot, to enforce payment of his judgment, of which mention has been made above.

The Court below sustained a demurrer to his complaint, and dismissed his suit. If the property in the *Hawkins* lot was not transferred to the new company by the act of consolidation, it still remains out of that company and its grantees, and this suit can not be sustained, because it is not against the proper parties. But if the property in that lot was transferred by the act of consolidation to the new company, then the title to it has been conveyed to *Morrison, Blanchard & Co.;* and the question fairly arises, whether it can be made subject, in the hands of those grantees, to the debts formerly owed by *The Cincinnati and Cambridge Co.* Those grantees are *bona fide* purchasers. They had no actual notice of the demand of *McMahan*. This is conceded. They had no constructive notice. *McMahan's* pending suit was

not in relation to the *Hawkins* lot, and hence was no notice to any one except a party to it. Ind. Dig., p. 594; *Ray* v. *Roe*, 2 Blackf. 258; *Frakes* v. *Brown, id.* 295. A precedent debt constitutes a valuable consideration for a conveyance. *Work* v. *Brayton*, 5 Ind. 397. It is not pretended that any lien had attached to the lot.

We have not to consider, then, how the case might stand had this lot not passed into the hands of innocent purchasers. See *Wright* v. *Bundy*, 11 Ind. 405. Upon existing facts the case stands thus: On *April* 13, 1854, *The Cincinnati and Chicago Railroad Company* owned a lot of ground, and conveyed it to a *bona fide* purchaser. The company was at the time in debt to other persons, among them *McMahan.* Two years afterward, viz., on *April* 14, 1856, he obtained a judgment on his claim against the company; and the question is, can he enforce it against the lot sold as above? The owner of property can sell it and give a good title to a *bona fide* purchaser despite his creditors, up to the time when they shall have acquired a lien. *McTaggart* v. *Rose*, 14 Ind. 230.

We do not see that any thing more or less has been done in this case. *Clark* v. *Rowling*, 3 Comstock, 216, is cited to show that the Court may look behind the judgment against the *Cincinnati and Chicago Co.*, to see upon whom and what it should, in equity, be executed. Suppose we admit the power; still, when in the exercise of it property, as in this case, is found in the hands of an honest purchaser for a valuable consideration, the Court will cease its action in such direction. See, 15 How. U. S. Rep. 307, and Am. L. Reg. 536.

As to the rights of a stockholder dissenting to a consolidation, see *Lauman* v. *Lebanon, &c. Co., supra.*

*Per Curiam.*—The judgment is affirmed, with costs.

*J. B. Julian*, for the appellant.

*O. P. Morton, J. F. Kibbey, J. S. Newman* and *J. P. Siddall*, for the appelles.

(1.) By counsel for the appellees : " In an action against the amalgamated company, upon a contract for construction made by one of the consolidated companies, the admissions or acts of the company making the contract, will bind the aggregate company by way of estoppel in *pais.*"

" It is no misapplication of the funds of the new company, to apply them first

to the payment of a large debt of one of the original companies." Redfield on Railways, 662; 1 American Railway Cases, 97, notes; also, 12 Howard, 307.

"According to the English authorities, the consolidated company would be bound to discharge the obligations of the original companies, without any special provision." Pierce on American Railroad Law.