## JANUARY TERM, 1873. 569

The State, *ex rel.* St. Jos. & D. C. Rld. Co., v. Comm'rs of Nemaha Co.

THE STATE, *ex rel.* THE ST. JOSEPH & DENVER CITY RLD. CO., v. COMM'RS OF NEMAHA COUNTY.

1. STOCK IN RAILWAY CORPORATIONS; *Power and Authority of County Commissioners to Subscribe.* Where, after an election has been held in a county which resulted in authorizing the commissioners to subscribe to the stock of a railroad corporation, and before such subscription has actually been made, such corporation, in pursuance of authority granted by general law in force at the time of the election, consolidated with another railroad corporation, *held,* that the authority to make any subscription was terminated, and that an attempted subscription by the commissioners to the stock of the new and consolidated corporation was *ultra vires,* and did not bind the county.

2. ———— Chapter 44 of the Laws of 1865, relating to the consolidation of railroad corporations, considered and construed, with respect to the consolidated company.

### *Original Proceedings in Mandamus.*

THIS action was commenced in this court in 1870, and an alternative writ of mandamus was awarded at the January Term 1871. See 7 Kas., 542, where a sufficient statement of the averments of the petition will be found. The *Board of County Commissioners* refused to issue the bonds of the county, as demanded by the *Railroad Company,* but in answer to the alternative writ showed cause. The additional facts, appearing upon the answer of the defendants, are fully stated in the opinion of the court. The action was tried at July Term 1872 of this court, and the opinion filed at the January Term 1873.

*B. F. Stringfellow,* and *John Doniphan,* for the relator:

1. The remedy to compel the issuing of the bonds by defendant is mandamus. 1 Ohio St., 77; 41 Mo., 221; 43 Mo., 117.

2. The facts authorizing the subscriptions to the capital stock of the relator, the organization of the Northern Kansas Railroad Co., the consolidation of the two corporations, and that the St. Joseph & Denver City Railroad Co. is entitled to all the franchise and rights of the Northern Kansas Rail-

37—10 KAS.

road Co., the subscription of the stock, and all the other facts as set out in the statement, are made out by the records of the defendant, and it is estopped from denying them in this case. The defendant (the county board) is a court of record: Gen. Stat., ch. 25, § 44. Copies of its proceedings are made evidence in all courts of the State: Code, § 372. The acts of the court can only be shown by its record, it acts only by its record, and cannot impeach or dispute the same: 7 Mo., 600; 8 Mo., 235; 6 Kas., 274.

3. The subscription was made under and by virtue of an act of the state legislature, which was at the time in full force: Ch. 12, laws of 1865, page 41. It was immaterial whether the petition on which the vote of May 8th 1866 was ordered by the court was signed by a fourth of the voters in the county, because the ordering of the vote was a judicial act, remaining unreversed, and cannot now be inquired into. The object of the law submitting subscriptions to vote is to arrive at the will of the electors, and mere informalities cannot be taken advantage of except by contesting the elections: 19 Ill., 407; 15 Ohio St., 137; 2 Cal., 135; 2 Abb., (N. S.,) 361. The declaration of the vote is proof *prima facie* of all prerequisites: 19 Ill., 406; 21 How., 539; 5 Iowa, 15.

4. Where a particular route is specified as a condition precedent to the payment of the subscription, and that route is followed, their subscription must be paid. 1 Redf. on Rlys., 201; 12 Rich., 675.

5. The laws of Kansas authorized the consolidation of the two companies; and although the company thus formed might have been unable to enforce a subscription to its stock, yet, when the defendant, after the consolidation, made a subscription founded upon the former vote, with a full knowledge of the facts, it is a consent to the consolidation. (7 Ind., 369.) The informalities or irregularities in the vote and subscription are all cured by the act of Feb'y 25, 1868; Gen. Stat., 892. This law took the place of all others, and was the only law in force on the 3d of January 1870 authorizing a subscription of stock. The power was vested in the board of

county commissioners: Comp. Laws of 1862, page 409, § 1; Gen. Stat., ch. 25, § 1; Const. of Kansas, § 21, art. 2, and § 2, art. 9.

*Joseph Sharpe,* for defendant:

1. Before the relator has any standing it must show that the Northern Kansas Railroad Company was consolidated with the St. Joseph & Denver City Railroad Co., by which act the said two railroad companies became a consolidated and single corporation, and became a corporation acting under and by virtue of the powers conferred by ch. 44, approved 13th February, 1865. Then the question presents itself, was there, under § 22 of said act, a legal consolidation of the said two railroad companies, as in law made a new and single corporation, and conferred upon such new corporation any authority in law to sue for and recover the $125,000 of the bonds of Nemaha county voted by the people of said county, previously, to the Northern Kansas Railroad Company? The first inquiry is, does the said § 22 authorize the consolidation? The language is: "Any railroad company in this state forming a continuous or connected line with any other railroad company may consolidate with such other company either in or out of this state into a single corporation in the following manner." Then follows the manner in which the agreement must be made. Now, what is the obvious reading of this section? It clearly only contemplates the consolidation of such roads as are already built and forming a continuous or connected line, and has no applicability to the building of a new road over the same line. Said two railroad companies did not form a continuous or connected line of railroad in this state, or out of it, and consequently are not within the provisions of the said act.

2. But if the court should decide that the relators had so far established their title as to show that the Northern Kansas Railroad Co. was a legally incorporated railroad company, and also, that the St. Joseph & Denver City Railroad Co. was at the same time a legally organized railroad company,

572     SUPREME COURT OF KANSAS.

The State, *ex rel.* St. Jos. & D. C. Rld. Co., v. Comm'rs of Nemaha Co.

and that said consolidation was done in due form of law and transferred all the rights, franchises, and privileges to the consolidated company, then the next question to be discussed, and to make up the title of the relators, is, does the board of county commissioners of Nemaha county stand under any legal liability to the relators to issue to them the bonds of said county to the amount of $125,000 as claimed? The law under which it is claimed that the board of commissioners acted, and became liable, if at all, was ch. 12, laws of 1865. This act this court, by its recent decision, (7 Kas., 542,) has held to a constitutional enactment. And it now only remains to inquire if there has been any such proceedings taken under it by the county board that they are liable to be compelled by the writ of mandamus of this court to issue said bonds to the present relators? Section one of said ch. 12 was amended by ch. 24 of the laws of 1866, and other provisions added; and this ch. 24 was the whole law in force at the time the attempted proceedings authorizing the county board to subscribe for stock and issue bonds to pay therefor.

Do the relators claim that any company, more particularly the Northern Kansas Railroad Co., had located a railroad to, into, through, from or near Nemaha county, at the time the question was submitted to the voters of said county for the subscription of said stock and for the issuance of said bonds to the amount of $125,000? It cannot be so contended, for such was not the fact. The election was held on the second Tuesday of May 1866, and no railroad was located by the relators or by those under whom they claim, until the 18th of September 1871, when the St. Joseph & Denver City Railroad Company, the present relators, filed a profile of their road in the office of the county clerk of said county. (7 Ohio St., 331; 10 Ohio St., 57.) Said ch. 24, laws of 1866, had a special proviso that such bonds (meaning the county bonds) authorized to be issued under the provisions of said law, where the county boards had not previously acted upon it should be issued in payment of assessments made upon all the stock of such railroad company. Here the county board expressly

exceed their authority, by attempting to issue $125,000 of bonds at one time to pay in full for 1,250 shares of $100 each of said stock, and its acts are void. 11 Ohio St., 183, 228; 9 Ohio St., 27, 136. This would be amply sufficient to defeat the recovery of the relators in this proceeding if this law of 1866 had still been in force at the time of the pretended subscription on the 3d of January, 1870. But the truth is, that it had been repealed unconditionally in 1868.

*Clough & Wheat*, also for defendant:

1. If the relator has shown a valid consolidation of the Northern Kansas Railroad Co. with another corporation, it is not entitled to a peremptory mandamus, because, by such consolidation a *new* corporation was created, and the Northern Kansas Railroad Company ceased to exist or be a corporation from or after the time of such consolidation, in October 1866. See § 22, page 102, Laws 1865, and 1 Wallace, 25; 48 Mo., 543; 15 Ohio St., 21; 6 Ind., 317; 27 Penn. St., 405; 27 Miss., 518. And the commissioners never had power given them to subscribe to any other than the capital stock of said Northern Kansas Railroad Co.

2. The relator claims to be a corporation organized under the charter granted by the act found on pages 193 to 198, of the territorial laws of 1857. It is not shown that the Northern Kansas Railroad Co. formed a continuous or connected line with the corporation created by the aforesaid act of 1857, but on the contrary, we submit it does affirmatively appear that the two consolidated companies did not, either separately or together, form a continuous or connected line; and as only such companies as did *then* (in 1866) form a continuous or connected line, could or were authorized to consolidate, by law, (said § 22, page 101, laws of 1865,) we submit that such a state of facts is not shown as would authorize the pretended consolidation; and, consequently, that the plaintiff's statements are not sufficient to show a merging of the Northern Kansas Railroad Co. in the relator, or that any rights therein, or thereof, have vested in the relator.

A corporation can only do such things as it is by law authorized to do; any act by it done beyond the power conferred upon it, is illegal, *ultra vires*, and void, and all powers not conferred on a corporation are withheld and denied, just as much as if the legislature had used express negative language for that purpose. 9 How., 172; 16 English L. & Eq., 180; 13 Peters, 519; 44 Barb., 625; 10 How. Pr., 543; 7 Wend., 412; 21 Penn. St., 22; 13 Minn., 64, 65; Pierce, 397, 404; 1 Southern Law Review, 5; 3 Head, 337.

The county board not having authority to make the pretended subscription relied on, the county has not, in legal estimation, made it; and as the Northern Kansas Rld. Co. had not power to consolidate with the first St. Joseph & Denver City Rld. Co., no one is *estopped* from denying such want of power, because of anything shown in this case: 3 Kas., 104; 38 Ill., 45; 31 Ala., 77; 11 Ohio St., 183; 22 Conn., 502; 46 Barb., 432; 10 Wal., 676.

The plaintiff does not pretend that any vote at any election held for such purpose in Nemaha county was ever cast in favor of a subscription being made in behalf of said county to the capital stock of the pretended relator.

3. If the Northern Kansas Rld. Co. and the corporation created by the said act of 1857 were consolidated with each other on the 9th of October 1866, as claimed by plaintiff, then it follows as a matter of course that there has not been any Northern Kansas Rld. Co. since said 9th of October 1866, because a consolidation of those two companies on that day would have occasioned and operated as a dissolution of the two previous companies, thus consolidated, and created a new corporation. (See § 22, page 101, laws 1865, and 1 Wal., 25; 6 Ind., 317; 15 Ohio St., 21; 48 Mo., 543.) It is equally clear that the vote or election claimed to have been had in May 1868 did not amount to a subscription or create a contract between the Northern Kansas Rld. Co. and the county: 6 Kas., 256; 34 Ind., 279.

4. Of course it cannot be successfully claimed that the pretended relator is the same corporation (the late Northern

Kansas Rld. Co.) as that to the capital stock of which plaintiff claims that by the pretended election of May 1866 the said county board were authorized to subscribe; and the pretended subscription relied on is void, and cannot be enforced against the county: 10 Wallace, 676; 16 Ind., 172; 48 Mo., 543; 21 Ill., 338; 10 Mass., 384; 23 Barbour, 21; 5 Hill, 383; 15 Ohio St., 438. These cases will show, beyond controversy, that a valid subscription could not have been made to, or for, the capital stock of a defunct corporation, as plaintiff itself shows the Northern Kansas Rld. Co. was, long before the pretended subscription relied on was made.

5. By reference to the plaintiff's petition (recited in the alternative writ,) it will be seen that the Northern Kansas Rld. Co. was required to *survey* and *locate its railroad* through Nemaha county before the bonds were to be issued; and also, that the bonds were to be issued to *that company* to be used for grading *its* road, in said county, *and for no other purpose whatever*. As we understand it, plaintiff does not pretend that said company ever *surveyed* or *located* its railroad through said county, nor is it pretended that such use can be made of the bonds if issued as required by the conditions specified in the order on which the vote was taken, but on the contrary, it is certain that the bonds if they shall be issued, cannot be used for any such purpose. By the last clause of § 2, ch. 24, laws of 1866, the commissioners were prohibited from subscribing stock in any manner other than under the restrictions and conditions specified. And as there is no pretense that the condition about survey and location by said Northern Kansas Rld. Co. of its railroad through said county has been complied with, and as it is certain, because of the dissolution and complete annihilation of that company, that such *survey* and *location* can never be made, and as it is equally clear that the bonds are wanted for any *such* purpose, therefore we submit that because of those conditions the bonds ought not to be issued, and that it is not, and never was, and never can become the duty of defendant to issue the same. In this connection, see 6 Ind., 316; 23 Barb., 21; 32 Miss., 373.

The opinion of the court was delivered by

BREWER, J.: Plaintiff applies to this court for a mandamus to compel the defendants to issue to it the bonds of the county of Nemaha to the amount of $125,000 in payment of an alleged subscription to the capital stock of said company. The facts as it claims them to exist are substantially as follows: In 1866 there were two railway corporations existing, the one known as the St. Joseph & Denver City Railroad Co., and the other as the Northern Kansas Railroad Co., each organized to construct a railroad from Elwood to Marysville, and also to receive subscriptions to its capital stock from the county of Nemaha. The county commissioners of said county duly submitted to the voters of said county the question of subscribing to the capital stock of the Northern Kansas Railroad Co. to the amount of $125,000, and issuing the bonds of the county in payment therefor. On the second Tuesday of May 1866 an election upon such question was duly held, and resulted in a majority vote in favor of making such subscription and issuing such bonds. The canvass of the votes cast at said election was duly made, and the result determined. On the 9th of October 1866 the said two corporations were duly and legally consolidated into a single corporation by the name and style of the "St. Joseph & Denver City Railroad Co." On the 3d of January 1870, in pursuance of the authority given by said vote on the second Tuesday of May 1866, the county commissioners of Nemaha county made a subscription to the capital stock of the St. Joseph & Denver City Railroad Co. to the amount of $125,000. The conditions as to the amount of work to be done towards building a railroad prescribed by the vote were complied with, and a railroad completed and operated by said company plaintiff through the county of Nemaha; and thereafter the plaintiff tendered a certificate of its fully paid-up stock to the defendant and demanded the bonds, which demand was refused. Upon these facts is the plaintiff entitled to a writ of mandamus?

The county commissioners are the agents of the county, but agents with limited and defined powers. They cannot by virtue merely of their office bind the county to a subscription to the capital stock of a railroad corporation, any more than could the sheriff, county clerk, or any other county official. A power so vast, and whose exercise affects so widely and deeply the interests of the county, is wisely entrusted to no official or agent. The people must give their agents the authority to subscribe, or they are not bound. We must look therefore beyond the mere fact of subscription to see what authority the commissioners had to make the subscription. The vote of the second Tuesday of May 1866 is the alleged authority. Was it authority? The subscription is not within the express terms of the authority. That vote empowered the commissioners to subscribe to the stock of the "Northern Kansas Railroad Co." The subscription was to the "St. Joseph & Denver City Railroad Co." Upon authority to make the county a stockholder in one corporation, they attempted to make it a stockholder in another. *Prima facie,* then, their act was *ultra vires.* Nor is it simply a case of change of names. Something more has been done than to change the corporate name. The consolidated corporation is a new and different one from either of the original. It unites the rights, franchises and obligations of two organizations to form a third. The effect of the consolidation was a dissolution of the two corporations and at the same instant the creation of a new corporation with property, liabilities and stockholders derived from those passing out of existence: *McMahan v. Morrison,* 16 Ind., 172; *Clearwater v. Meredith,* 1 Wallace, 40. The statute authority for railroad consolidations in force at the time of this consolidation is to be found in the laws of 1865, pp. 101, 102, 103, ch. 44, §§ 22, 23, 24. These sections contain these provisions:

"Any railroad company forming a continuous or connected line with any other railroad company may consolidate with such other company * * * into a single corporation. An agreement may be made by the directors for the consolidation prescribing the terms and conditions thereof, * * *

the name of the *new* corporation, the number of shares of capital stock in the new corporation, the amount of each share, * * * the manner of compensating stockholders in each of said two or more corporations who refuse to convert their stock into the stock of such new corporation; and such new corporation shall possess all the powers, rights, and franchises conferred upon such two or more corporations: * * * *Provided*, that all the stockholders in either of such corporations who shall refuse to convert their stock into the stock of such *new* corporation, shall be paid, etc. Upon making the agreement * * * said two or more corporations shall be merged in the *new* corporation. * * * Upon the election of the first board of directors of the corporation *created* by the agreement * * * the rights and franchises of each and all of said two or more corporations, parties to such agreement, * * * shall be deemed to be transferred to and vested in such new corporation, * * * and such new corporation shall hold and enjoy the same: * * * *Provided*, that all rights of creditors, and all liens upon the property of either of said corporations, parties to said agreement shall be and are hereby preserved unimpaired, and the respective corporations shall continue to exist so far as may be necessary to enforce the same."

It will be seen from these quotations, and more clearly from a reading of the entire sections, that not merely is the consolidated corporation called a *new* corporation, but that in fact a new organization, an original, separate corporation is by this process called into existence. The old are merged into the new, except so far as their existence is necessary to preserve the rights of creditors and enforce liens. In the amount of stock, the number of shares, the number of directors, the time and place of electing them, the rights and franchises, and the obligations and responsibilities, as well as in the name, the new may differ from either of the old. It is therefore in fact as well as in name another corporation. But it is said that the Northern Kansas Railroad Co. was, in pursuance of law, and by the act of consolidation merged in the St. Joseph & Denver City Railroad Co., and that the latter succeeded to all the powers, rights, and franchises, and assumed all the debts, liabilities, and duties of the former.

This is all true, but it does not avail the plaintiff anything. The mere vote of the people giving the commissioners authority to subscribe created no contract between the county and the company—gave the latter as against the former no rights, and imposed no duties. The company had nothing which it could transfer—nothing which its successor could take. The Northern Kansas Railroad Co. could not by virtue of the vote compel the commissioners to subscribe; neither could the county compel the company to build its road in compliance with the conditions of the vote. Neither had, as against the other, any rights, whether of action or otherwise. So, that though the consolidation transferred all the rights and franchises of the Northern Kansas Rld. Co., it transferred nothing as against the county of Nemaha. This point has been settled in this court by the decision in the case of the *L. G. Rly. & Trust Co.* v. *Comm'rs of Davis Co.*, 6 Kas., 256. (See also the authorities cited in the opinion of the court in that case.) It is unnecessary therefore to pursue this inquiry further.

Again, it is urged that the law authorizing the consolidation of railroads was in force at the time of the vote, and that therefore the vote was based upon that law, and authorized the commissioners to subscribe to the stock of the Northern Kansas Rld. Co., or to that of any other company into which it might be consolidated. We do not so understand the law of agency. Authority from a principal to an agent to do a specific act is limited to that act, and does not empower the agent to bind his principal to an act securing essentially different rights, and imposing essentially different obligations. Nor is the authority enlarged because the party with whom the agent is empowered to contract is by law at liberty to change his conditions and relations. A principal empowers an agent to invest his money in a certain named partnership, with specific amount of capital. Now any partnership may, with the consent of its members, change its name, admit new members, and increase its capital. When all this has been done, will any one contend that the agent may by virtue of

the original authority invest his principal's money in such new partnership? Yet the cases are parallel. Each is a case of principal and agent. In each the authority is specific and definite. Each party with whom the contract is to be made has, by law in force at the time the authority is given, the power to change its relations and conditions. It does make such change, a change which would materially affect the rights and obligations of the parties to the contract if executed. In each the authority of the agent fails. Indeed, it may safely be affirmed, as a general rule, that where an agent has authority to make a specific contract with a third party any change in the conditions and relations of that party which would materially modify the contract destroys the power of the agent. Again, it has been often held that even after a subscription has been made to the capital stock of a corporation if a material change be made in the charter by which a new and different business is superadded to that originally contemplated, or its purpose and powers altered, such of the stockholders as do not consent to the alteration will be released from liability on their subscription: *Supervisors of Fulton Co. v. M. & W. Rld. Co.*, 21 Ill., 339; *Middlesex Turnpike Co. v. Swan*, 10 Mass., 384; *B. C. & N. Y. Rld. Co. v. Pottle*, 23 Barb., 21; *Hartford & N. H. Rld. Co. v. Croswell*, 5 Hill, 383; *Middlesex Turnpike Co. v. Locke*, 8 Mass., 268. True, this doctrine has, at least to its full intent, been considered inapplicable in cases where by the terms of the charter the legislature reserved the power to alter and modify it, (*Schenectady & S. Rld. Co. v. Thatcher*, 11 N. Y., 102,) and may in this state be greatly limited by § 1 of art. 12 of the constitution, which provides that "corporations may be created under general laws, but all such laws may be amended or repealed." Yet, if in any case a material change in the corporation can avoid a subscription *a fortiori* will it annul a mere authority to subscribe. But it is unnecessary to inquire how far the legislature has power, after subscription, to change the relations and liabilities of stockholders, for so far as the law authorizing consolidation is concerned

it expressly reserves to each stockholder of the old the right to determine whether he will become a stockholder in the new corporation. It contains this clause: "*Provided,* that all the stockholders in either of such corporations, who shall refuse to convert their stock into the stock of such new corporation, shall be paid at least par value for each of the shares so held by them, if they shall so require, previous to said consolidation being consummated." So that if the county of Nemaha had actually subscribed to the stock of the Northern Kansas Rld. Co. it might still have declined to become a stockholder in the company plaintiff. See, as sustaining the general views herein expressed, *Supervisors Fulton Co. v. M. & W. Rld. Co.,* 21 Ill., 338; *Marsh v. Fulton Co.,* 10 Wal., 676; *Carlisle v. T. H. & R. Rld. Co.,* 6 Ind., 316; *McMahan v. Morrison,* 16 Ind., 172; *Clearwater v. Meredith,* 1 Wal., 25; *Bell v. Railway Co.,* 4 Wal., 599.

We have considered this case as though the facts claimed by the plaintiff were proved; and as upon them we think its case must fail it is unnecessary to inquire how far the testimony sustains the allegations. Judgment will be entered in favor of the defendant.

All the Justices concurring.