## Case No. 6,148.

### HARSHMAN v. BATES COUNTY.

[3 Dill. 150.][1]

Circuit Court, W. D. Missouri. 1874.[2]

MUNICIPAL BONDS — CONSTITUTION OF MISSOURI— PRECEDENT VOTE—EFFECT OF CONSOLIDATION ON PREVIOUS VOTE.

The constitution of Missouri (article 11, § 14) requires a two-thirds vote to authorize municipal subscriptions to the stock of a railroad corporation. A township voted stock in company A, which afterwards, under a general law of the state. consolidated with company B, and formed thereby a new company, C. *Held*, that a subsequent subscription by the township to company C, by virtue of the prior vote to company A, was unauthorized, and bonds which on their face recited these facts. were void, even in the hands of a bona fide holder for value.

[Distinguished in Thomas v. Scotland Co., Case No. 13,909; Washburn v. Cass Co., Id. 17,213. Cited in Foote v. Johnson Co., Id. 4,912.]

[Cited in City of Mt. Vernon v. Hovey, 52 Ind. 569.]

[See note 2 at end of case.]

This is an action [by G. W. Harshman], against the county of Bates on a large number of coupons originally attached to bonds issued by the county court of the above named county.

The following is a copy of one of the bonds and coupons as set out in the petition (form of the bond): "No. 46. United States of America. $1,000. State of Missouri, county of Bates. Issued pursuant to articles of consolidation in payment of stock due the Lexington, Lake & Gulf Railroad Company, consolidated Oct. 4th, A. D. 1870. Know all men by these presents, that the county of Bates, in the state of Missouri, acknowleges itself indebted and firmly bound to the Lexington, Lake & Gulf Railroad Company, in the sum of one thousand dollars, which sum the said county of Bates, for and in behalf of Mount Pleasant township therein, promises to pay to the said Lexington Lake & Gulf Railroad Company or bearer, at the Bank of America, in the city and state of New York, on the 18th day of January, A. D. 1886, together with interest thereon, from the 18th day of January, A. D. 1871, at the rate of ten per cent. per annum, which interest shall be payable annually on the presentation and delivery at the said Bank of America, of the coupons hereto attached. This bond being issued under and pursuant to an order of the county court of Bates county, by virtue of an act of the general assembly of the state of Missouri, approved March 23d, 1868, entitled, 'An act to facilitate the construction of railroads in the state of Missouri,' and authorized by a vote of the people, taken May 3d, 1870, as required by law, upon the proposition to subscribe ninety thousand dollars to the capital stock of the Lexington, Chillicothe

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 92 U. S. 569.]

& Gulf Railroad Company, and which said railroad company last aforesaid, and the former Pleasant Hill Division of the Lexington, Chillicothe & Gulf Railroad Company were on the 4th day of October, 1870, consolidated, as required by law, into one company, under the name of the Lexington, Lake & Gulf Railroad Company. And which said last named railroad company, as provided by law, and under the terms of said consolidation thereof, possesses all the powers, rights and privileges, and owns and controls all the assets, subscriptions, bonds, moneys, and properties, whatever, of the two said several companies forming said consolidation, or either one of them. In testimony whereof, the said county of Bates has executed this bond by the presiding justice of the county court of said county, under the order thereof, signing his name hereto, and by the clerk of said court, under the order thereof attesting the same and affixing the seal of said court. This done at the city of Butler, county of Bates, this eighteenth day of January, A. D. 1871. Attest: W. J. Smith, Clerk of the County Court of Bates County, Mo. B. H. Thornton, Presiding Justice of the County Court of Bates County, Mo. County Court of Bates County, Mo. (Seal.)"

The following is the form of the coupons: "$100. Butler, Bates county, Mo., January 18th, A. D. 1871. The county of Bates acknowledges to owe the sum of one hundred dollars, payable to bearer on the 18th day of January, 1873, at the Bank of America, in the city and state of New York, for one year's interest on bond No. ———. W. J. Smith, Clerk County Court Bates County, Mo."

The plaintiff in his petition alleged that on the 18th day of January, 1871, the defendant issued its several bonds set out in the several counts of the petition (to recover the amount evidenced by coupons on which the suit was brought), by which it bound itself to pay to the Lexington, Lake & Gulf Railroad Company and for and on behalf of Mount Pleasant township, in said county, one thousand dollars, which it promised to pay to said company at the Bank of America, etc. It alleges that prior to the 5th day of April, 1870, certain tax-payers of Mount Pleasant township petitioned the county court of Bates county, setting forth their desire to subscribe $90.000 to the stock of the Lexington, Chillicothe & Gulf Railroad Company, and thereupon the court ordered an election in the said township for May 3, 1870, which was held, and two-thirds of the qualified voters of the said township voting thereat voted for it. It further alleged that on the 14th day of July, 1870, another corporation was formed by the name of the Pleasant Hill Division of the Lexington, Chillicothe & Gulf Railroad Company, and that these two corporations, one being the Lexington, Chillicothe & Gulf Railroad Company, and the other being the Pleasant Hill Division of the Lexington, Chillicothe & Gulf Railroad Company, were on the 4th

day of October, 1870, consolidated under the name of the Lexington, Lake & Gulf Railroad Company. That thereafter, to-wit, on the 18th day of January, 1871, the county court of Bates county, "in pursuance of the authority conferred upon it by the said vote of the people of said township, subscribed the said sum of $90,000 in behalf of said township to said Lexington, Lake & Gulf Railroad Company (the consolidated railroad company); and that said bonds (to which the coupons in suit were annexed) were, among others, issued by said court in payment of said subscription."

Plaintiff in his petition also states that said Lexington, Chillicothe & Gulf Railroad Company was by the terms of its charter to commence at the city of Lexington, in Lafayette county, Missouri, and thence to run southwardly from said city to Holden, on the Pacific Railroad, in Johnson county; thence southwardly through said county of Johnson and the county of Cass, in the direction of Butler, in Bates county, and thence southwardly to such point in said county as might be found most advantageous to connect said railroad with Fort Scott, Kansas; and that said Lexington, Lake & Gulf Railroad Company was, by the terms of consolidation, agreed upon between said Lexington, Chillicothe & Gulf Railroad Company and said Pleasant Hill Division of said Lexington, Chillicothe & Gulf Railroad Company, to commence at said city of Lexington, and to run thence southwardly along the original route of said Lexington, Chillicothe & Gulf Railroad to the southern boundary of Lafayette county, and thence south-westwardly through Jackson county to the city of Pleasant Hill, on the Pacific Railroad, in Cass county; thence southwardly through said Cass county to the south line of said county, where it was to intersect the original route of the said Lexington, Chillicothe & Gulf Railroad Company; and from such point of intersection to such point in said Bates county as should be required to enable said consolidated company to demand, receive and avail itself of the subscriptions voted it by Mount Pleasant township as aforesaid, and by the township of Grand River, in said county, or either of them; thence to such point in or through Bates county as might be found most advantageous to connect with railroads, constructed or to be constructed in the state of Kansas, or to extend southward through such counties in Missouri as might be most advantageous to connect or consolidate with railroads leading to the states of Arkansas or Texas, or to the Gulf of Mexico. Plaintiffs state that the amount of capital stock of said Lexington, Chillicothe & Gulf Railroad was fixed by its charter at two million dollars, and that the capital stock of said consolidated road was also fixed by said articles of consolidation at two million dollars, and that the duration of each of said corporations was fixed at one hundred years. Plaintiffs state

that said town of Butler is in or about the center of said Mount Pleasant township,·in Bates county; and that said consolidated road is now located, graded and bridged from the said city of Lexington along the route of said consolidated road, as above described, to said town of Butler, and for several miles southward of said town; that southward of said town, so far as built, it pursues the same general direction as the proposed line of said Lexington, Chillicothe & Gulf Railroad, as above described; and that northward thereof it pursues identically the same line in the counties of Bates and Lafayette, and that the greatest divergence between said two lines at any point is fifteen miles, and that the distance between said town of Butler and said city of Lexington is eighty-three miles. The plaintiff alleges that he became a holder of the coupons in suit before maturity and for value, and asks judgment for the amount thereof.

The defendant demurs to the petition on the ground that it shows that the county court had no authority in law to make the subscription recited in the bonds or to issue the bonds in payment therefor, and because it also shows that the question of making the subscription to the new or consolidated company was never submitted to a vote of the people of Mount Pleasant township, nor assented to by them as required by the constitution and laws of the state.

T. K. Skinker, for plaintiff.

Glover & Shepley and C. C. Bassett, for defendants.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

DILLON, Circuit Judge. The following facts are recited in the bonds (the coupons on which are in suit), and alleged in the petition:

1. That the bonds were "issued pursuant to articles of consolidation in payment of stock due the Lexington, Lake & Gulf Railroad Company, consolidated October 4, 1870."

2. That they were issued by the county "for and in behalf of Mount Pleasant township," under the act of March 23, 1868, known as the "Township Railroad Aid Law." Laws 1868, p. 93; 1 Wag. St. p. 313.

3. That the proposition submitted on the 3d day of May, 1870, to the voters of the township, and by the requisite majority then assented to, was whether they would authorize the county court to "subscribe $90,000 to the capital stock of the Lexington, Chillicothe & Gulf Railroad Company."

4. That afterwards, July 18, 1870, another corporation was newly formed under the laws of the state, namely, the Pleasant Hill Division of the Lexington, Chillicothe & Gulf Railroad Company, and that afterwards, October 4, 1870, under the act of March 24, 1870,· these two companies (as recited in the bond) were "consolidated as required by law, under the name of the Lexington, Lake & Gulf

Railroad," (the payee of said bond)—"which last named company," the bond continues, "as provided by law, and under the terms of said consolidation thereof, possesses all the powers, rights and privileges, and owns and controls all the assets, subscriptions, bonds, moneys and properties whatever of the two said several companies forming said consolidation, or either of them."

5. That afterwards, January 18, 1871, the county court, claiming to be authorized thereto by the above mentioned vote of May 3, 1870, in Mount Pleasant township, and reciting this vote in the bonds, as its source of power, made the subscription, not to the company to which it had been voted, but to a new company, into which that company had, after the vote, but previous to the subscription, been merged or consolidated under the laws of the state.

Upon these facts, all of which appear on the face of the petition, and, substantially, all of them, on the face of the bonds in suit, the question is, whether the bonds are valid and binding obligations in the hands of a bona fide holder? This case contains an element not in the Cass county township bond cases decided at this term on demurrer, growing out of the fact that here the subscription was made after the vote was taken, to a new or consolidated company. Jordan v. Cass Co. [Case No. 7,517].

The case also differs, as I think, from other cases in this court, and from cases decided by the supreme court of the United States, in the circumstance that all of the facts relied on as showing the want of power to issue the bonds, are recited in the bonds themselves; and clearly, as it seems to me, it must be true that the holder of these bonds is chargeable with actual notice of the facts therein stated concerning them; and if such facts show that in point of law the county court had no power to make the bonds, the holder is conclusively presumed to have knowledge of such want of authority. If the facts stated in the bonds, and averred in the petition, show that there was no power to issue the bonds, and if the plaintiff is affected with notice of these facts, and of their legal consequences, we have no question here as to the rights of an innocent holder for value; for the case is the same as if the action were by the railroad company to which the subscription was made and the bonds delivered.

The case differs also from those in which the subscription was made by the county court without a vote of the people, under authority to do so, contained in special charters granted prior to the adoption of the constitution, as in Nicolay v. St. Clair Co. [Case No. 10,257], decided at this term.

The provisions of the constitution, and the general law of the state in pursuance of it, apply to this subscription; so that, as between the county or the people of the township, on the one hand, and the railroad company, or any holder of the bonds with actual

notice, on the other, an assent of two-thirds of the qualified voters of the township to the making of the subscription is an indispensable prerequisite to its lawfulness, and to the validity of the bonds issued in payment therefor.

The constitution of Missouri, of 1865, contains the following: "The general assembly shall not authorize any county, city or town to become a stock-holder in or loan its credit to any company, association or corporation, unless two-thirds of the qualified voters of such county, city or town, at a regular or special election to be held therein, shall consent thereto." Article 13, § 14.

And this requirement of a two-thirds vote as a condition of the right of any county, city or town, to take stock in or loan credit to any railroad company, is also made in the enactments of the legislature passed in pursuance of the above mentioned provision of the constitution. Wag. St. p. 305, §§ 17, 18, And such a precedent vote is also required in the township railroad aid act of March 23, 1868, under which the vote was taken and the bonds now before the court were issued. Jordan v. Cass Co. [supra], at this term.

Accordingly, the question was submitted to the voters of Mount Pleasant township, on the 3d day of May, 1870, whether they would subscribe $90,000 to the Lexington, Chillicothe & Gulf Railroad Company; and the requisite two-thirds of those voting at the election voted therefor. But before any subscription was made, or bonds issued, or steps taken to carry out this vote, the company in whose favor the aid was voted consolidated with a distinct corporation not in existence when the election was held, and the two (as recited in the bond) were merged "into one company, under the name of the Lexington, Lake & Gulf Railroad Company;" to which, in January following, the subscription, under the vote of the previous May, was made, and the bonds in suit issued.

The consolidation was made under the act of March 24, 1870, which authorizes a majority in interest of "any two or more railroad companies in the state * * * to consolidate in the whole or in the main, and form one company, owning and controlling such continuous line of road, with all the powers, rights, privileges and immunities, and subject to all the liabilities and obligations to the state, or otherwise, which belonged to or rested upon either of the companies making such consolidation." Wag. St. p. 314, § 56. So that, upon the face of the act, it appears that upon the consolidation being effected in pursuance of its provisions, the old corporations are merged in the new, which, however, succeeds to all the rights, powers, privileges and immunities, and is subject to all the liabilities and obligations, of both the companies making the consolidation. And such would appear to be the effect of the consolidation, were there no statute provisions upon the subject. Clear-

water v. Meredith, 1 Wall. [68 U. S.] 40; McMahan v. Morrison, 16 Ind. 172; Tomlinson v. Branch, 15 Wall. [82 U. S.] 465.

Under the legislation of the state, when two companies consolidate and form one, the stock is changed, and the former companies become extinct, and the line of the road is changed as may be provided in the articles of consolidation. In the case before the court, the nature of the changes in the line of the road of the consolidated company is set forth in the petition. And it seems to me to be perfectly clear, upon well-settled principles of law, that a subscriber to the stock of company A, after it has consolidated with company B, and formed company C, can not be compelled by the latter company to pay the subscription; and the plain reason is that such was not his contract. Such a change is structural and organic, and is not binding upon a non-assenting subscriber or stockholder, unless the right to make it is given by statute, or was reserved at the time the corporation was created, or the contract of subscription made.

In support of these views, the case of Clearwater v. Meredith, supra, decided by the supreme court of the United States, is a direct authority; and if it can not be reconciled with the majority opinion in the Pacific R. Co. v. Hughes, 22 Mo. 291, it would not be difficult, perhaps, to show that the views of the supreme court of the United States, aside from their authoritative force in this court, are most consonant with principle, and with adjudications elsewhere. It follows that if the subscription which Mount Pleasant township authorized by its vote had actually been made, it could not have been enforced by the new company; if made by the county court to the new company, it would be without authority, and bonds issued therefor would be both unauthorized and without consideration, and could not, therefore, be enforced by the new company, or by any holder with notice of the facts, unless by virtue of the act of March 24, 1870.

But the case in hand is one where no subscription was ever made to the company to which it was voted; and it might be conceded that if it had been actually made, the right to it would pass by operation of the statute to the new company, without the concession involving the consequence of a liability upon a subscription made for the first time after the new corporation was formed.

The opposite view would nullify the constitutional provision, by defeating the purpose it was designed to accomplish. The theory of the constitution and the acts of the legislature passed in pursuance of it, is, that no stock in a railroad company shall be taken by the public corporations or municipalities of the state, unless two-thirds of the voters sustain it; and it is necessarily implied that the company whose stock is to be taken and paid for in bonds must be specified and known. Is it possible that when

the people vote that they will take stock in a particular company, which is named, this will authorize the county court to make the subscription to another corporation? The frauds which such a doctrine would produce, and the injustice which would result from it, may be readily foreseen, and need not be portrayed. By such a construction the constitutional provision, which was conceived in the highest wisdom, and was intended to remedy for the future a mischief then already begining to be felt, would be deprived of effective operation. and rendered of little or no value. The principle, where the law requires a precedent vote, and the vote is in favor of the municipal or public corporation subscribing to the stock of a particular company, that a subscription to the vote of another and distinct corporation is unauthorized and not binding, was decided by the supreme court of the United States in the case of Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676, and that, too, in a case where the face of the bonds did not so fully as in the case at bar display the history of their issue, and of the subscription in which they originated.

In my judgment, under the principles established by the cases of Clearwater v. Meredith, and Marsh v. Fulton Co., above mentioned, the county court of Bates county had no power to make the subscription recited in the bonds here in question, or to issue the bonds; and I consider this view to be consistent with the many cases in which that court has decided, in substance, that nothing but a want of power to issue such securities can avail against a holder for value, without actual notice of the equities set up by the way of defense.

I might dwell upon the fact that the statute in relation to the consolidation was, as in the case of Clearwater v. Meredith, permissive and not mandatory upon the companies; and point out the hardship of holding the township or its people bound by a subscription to a consolidated company, when they had never authorized such a subscription, nor ever had an opportunity to vote against or oppose the consolidation; but it is scarcely necessary to do so.

As the facts which in law show the bonds to have been issued without authority appear on their face, and are alleged in the petition, it is my judgment that the plaintiff can not recover thereon; and accordingly, the demurrer to the petition will be sustained. Judgment accordingly.

KREKEL, District Judge, dissented.

Thereupon the circuit judge announced the following points of disagreement between himself and the district judge:

The judges of the court were opposed in opinion upon the question whether the petition set forth a legal cause of action against the defendant. Also, upon the question whether the demurrer to the petition ought to be sustained. Also, upon the question whether the county court had authority, under the constitution and laws of the state of Missouri, to subscribe to the stock of the consolidated company, under the vote of the 3d of May, 1870, in favor of one of the companies, which, after the vote, but before the subscription, consolidated with another company, forming thereby the company to which the subscription was made and the bonds issued. Also, upon the question whether the recitals in the bonds affected the plaintiff with notice of facts which defeat his right to recover thereon.

NOTE 1. The foregoing decision was made before the judgment of the supreme court in Nugent v. Supervisors of Putnam Co., 19 Wall. [86 U. S.] 241. That case differs from the one above reported, in this: There the subscription to one of the constituent companies was before the consolidation, here it was afterwards. In this case there was nothing but a bare vote before the consolidation and that, without more, creates no contract between the municipality and the railroad company. This is clear in principle and is settled law. Aspinwall v. County of Jo Daviess, 22 How. [63 U. S.] 364; Dill. Mun. Corp. § 42. Under the constitutional provision requiring a vote of the people before any municipality shall "become a stockholder in or loan its credit to any company," I still think that the subscription, or agreement to subscribe, must be to the company in whose favor the vote was taken, and that this vote cannot be carried over to the consolidated company and the subscription made to it. Whether this view is reconcilable with the opinion of the supreme court in the Nugent Case, remains yet to be decided. I think the cases can be and ought to be distinguished, and after reading the foregoing opinion in the light of the opinion of the Nugent Case, I am still satisfied with it, and that any other doctrine practically nullifies the constitutional provision, which originated in necessity and was intended to protect the people from the abuse of the power to aid railroads by loaning them their credit or purchasing their stock. See Thomas v. Scotland Co. [Case No. 13,909].

[NOTE 2. From this judgment sustaining the demurrer the plaintiff appealed to the supreme court (92 U. S. 569), where, in an opinion by Mr. Justice Bradley, the judgment of the circuit court was affirmed. The "Township Aid Act" of 1868 was held to be repugnant to the fourteenth section of article 11 of the constitution of Missouri adopted in 1865, the specifications mentioned therein being held to embrace every political organization which could be supposed capable of making a subscription.

[The objection to the validity of the subscription on the ground that the vote was for one company and the county court substituted another was also sustained. "The law authorizing the consolidation of railroad companies does not change the law of attorney and constituent." "It does not continue in existence powers to subscribe for stock, given by one person to another, which, by the general law, are extinguished by such a change."]

HART (BENJAMIN v.). See Case No. 1,302.

HART (BOUCICAULT v.). See Case No. 1,-692.