## THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY v. THE BOARD OF COMM'RS OF STAFFORD COUNTY.

1. COUNTY BOARD; *Subscription to Stock of Railroad; Record of County Board as Evidence.* A proposition was submitted to the voters of a county to subscribe to the capital stock of a railroad company, payable in bonds of the county, upon certain conditions therein named; which proposition, at an election properly called therefor, was legally carried, and upon a canvass of the votes the proposition was duly declared carried by the board of county commissioners of the county. Upon the day of the canvass of the votes, and after the proposition had been declared carried, the county clerk asked one of the members of the board in the presence of all the other members, while the board was in session for the transaction of business, "If it was his duty now to subscribe for the stock at the proper time;" said member, in the presence of the other members, answered "That it was." No objection was made to this direction by any member of the board; the clerk understood the answer to be an order from the board for him to go ahead and subscribe the stock; the chairman of the board heard the clerk ask the question concerning the subscription of stock, and the order given him, and also understood thereby that the board directed the clerk to subscribe the stock. The order for the subscription was not entered of record in the proceedings of the board. Soon afterward the county clerk subscribed the stock, as directed, in the name of the county. Afterward the railroad was constructed in compliance with the terms of the proposition voted upon; and in an action brought against the county upon its subscription for the stock to compel the county to

issue its bonds therefor, it was contended on the part of the county, that there was no subscription, upon the ground that no resolution or order, in writing or otherwise, had been adopted authorizing the subscription made by the county clerk : *Held*, That it was competent to prove by parol evidence, that the county clerk was directed by the board of county commissioners to subscribe the stock ; and also *held*, that the evidence in said action from one of the commissioners that he did not hear the order or direction given to the clerk, did not render the order invalid. *Held, further*, That upon the facts testified to in this case, the subscription made in the name of the county is valid.

2. CORPORATION; *Existence, Not to be Attacked Collaterally.* After a railroad company has been merged by consolidation in another railroad company, and such new corporation is transacting and carrying on business, and is a *de facto* corporation, the existence of the corporation can only be attacked in a direct proceeding brought for that purpose. Such a matter will not be inquired into collaterally.

3. EXISTENCE, *Begins When.* The existence of a corporation organized under the general laws of the state dates from the time of filing its charter, and it is not prerequisite that all the capital stock of the corporation be subscribed for it to transact business.

*Original Proceedings in Mandamus.*

MANDAMUS, brought in this court July 14, 1886, by *The Railroad Company* against the *County Board of Stafford County.* The opinion herein, filed January 7, 1887, contains a sufficient statement of the case.

*Geo. R. Peck, Geo. W. McCrary*, and *A. A. Hurd*, for plaintiff.

*J. W. Rose*, and *Waters & Chase*, for defendants.

The opinion of the court was delivered by

HORTON, C. J.: This is an action to compel the defendants, as the board of county commissioners of Stafford county, to issue seventy-two bonds of that county, of the denomination of one thousand dollars each, with interest coupons attached, upon an alleged subscription in writing, to the capital stock of the Arkansas River & Western Railroad Company. This railroad company was duly incorporated under the laws of the state, and empowered to construct, operate and maintain

a railroad commencing at or near the city of Hutchinson, in the county of Reno, and extending southerly through the counties of Reno, Stafford, Pawnee, and Hodgeman. On October 13, 1885, a proposition was submitted to the voters of Stafford county to subscribe to the capital stock of the railroad company in the sum of one hundred and twenty-eight thousand dollars, upon the conditions that as soon as the proposition should be determined in the affirmative by a canvass of the votes cast at the election, the board of county commissioners, for and on behalf of the county, should order the county clerk to make, and the county clerk should make, a subscription in the name of the county, for twelve hundred and eighty shares of the capital stock of said company, and upon the completion of the road, and its operation by lease or otherwise, from a connection with the Atchison, Topeka & Santa Fé Railroad Company at or near Hutchinson, by way of the city of Stafford, in Stafford county, to the city of St. John, in Stafford county, the company should receive seventy-two thousand dollars of the bonds, and issue therefor seven hundred and twenty shares of stock; and upon the completion of the road, and its operation to the west line of Stafford county, the company should receive an additional fifty-six thousand dollars of bonds, and issue therefor fifty-six thousand dollars of shares of its stock; that the board of county commissioners should cause the bonds when earned to be issued in the name of the county, and should deliver the same to the company on delivery or tender to the board of county commissioners by the railroad company of certificates of shares of fully paid up capital stock of said company equal in amount with the bonds. After the election upon the proposition and a canvass of the returns thereof, it was duly ascertained and declared that the proposition to subscribe to the capital stock of said railroad company had been legally carried.

On October 31, 1885, T. A. Hays, the county clerk of Stafford county, subscribed for twelve hundred and eighty shares of the capital stock of said railroad company, of the par value of one hundred dollars per share, in the name of

the county; the same to be paid for in bonds of the county issued to the railroad company, in accordance with the terms and conditions of said proposition above referred to.    Afterward the Arkansas River & Western Railroad Company entered into a contract with another company, by which it sold all of its stock and bonds in order to obtain the necessary funds to construct its road, and with these funds the road was constructed, in compliance with the terms of the proposition. On May 31, 1886, the Arkansas River & Western Railroad Company was merged by consolidation in the Chicago, Kansas & Western Railroad Company, which was a consolidation of several constituent companies.    On October 9, 1886, the charter of the consolidated company was so amended as to authorize the construction of additional lines of road.    On July 6, 1886, the plaintiff tendered to the county treasurer of Stafford county certificates of its capital stock, fully paid up, in amount of seventy-two thousand dollars, and demanded the issuance of bonds therefor, as required by the terms of the proposition submitted on October 13, 1885.

The principal question presented for our determination is, whether there was a valid subscription.    There was no written order or resolution of the board of county commissioners, ordering the county clerk to make any subscription.    It is claimed, however, that an order was actually made, and, as the record of the proceedings of the board is silent in this respect, that the order may be proved by parol evidence.    While the statute requires that the county clerk shall record all the acts and proceedings of the county board, yet there is no statute that renders such acts or proceedings void, if not recorded, and no statute that makes the records of the county board the only evidence of its acts and proceedings.    (*Gillett v. Comm'rs of Lyon Co.*, 18 Kas. 410.) Therefore, if any order was made by the board to the clerk to make the subscription, and the same was not properly recorded, the order may be established by parol evidence. This has ·been decided in *Butler v. Comm'rs of Neosho Co.*,

1. Subscription to stock of railroad; record of county board as evidence.

15 Kas. 178, and *Gillett v. Comm'rs of Lyon Co.*, supra; *City of Troy v. Railroad Co.*, 11 Kas. 519. See also *Town of Solon v. Bank*, 35 Hun, 1.

An examination of the detailed facts as proved shows that on the day that the votes upon the proposition to subscribe the stock were canvassed, the board of commissioners of Stafford county consisted of Messrs. Dewey, Wilbur, and McCoomb. After the proposition had been declared by the board as having been carried, the county clerk asked Wilbur while the board was in session "If it was his duty now to subscribe for the stock at the proper time," who answered "That it was." No objection was made by any of the other members of the board, and the clerk understood the answer to be an order from the board for him to go ahead and subscribe the stock. Wilbur testified among other things as follows:

"Q. Were you present at the time the vote was canvassed for the election to vote bonds to the Arkansas River & Western Railroad Company? A. Yes, sir.

"Q. State whether there was any order, either verbal or otherwise, given to the clerk at that meeting authorizing him to subscribe to the capital stock of that railroad company. A. The matter was talked over, and Mr. Hays was instructed to make the subscription of stock.

"Q. Was that done by written instruction, or verbal? A. It was done by verbal instruction.

"Q. Was it done in the usual and customary manner of doing business where there was no dispute between the members of the board? A. As preliminary, I want to state how we were in the habit of doing in all matters that came up. When there was no difference of opinion between members of the board, it was customary for one member to speak up and ask if that meets with the concurrence of the others. It was not customary until within the last three or four months, since we got into this railroad muddle, to differ from that custom by making motions and putting matters to a vote, for, as I said before, that we did not put any motions except there was a controversy or difference of opinion between members of the board.

"Q. And this order was made in the same manner? A. Yes, sir."

E. W. Dewey, the chairman of the board, testified as follows:

"Q. You may state if you were present at the time the vote was canvassed for voting bonds to the Arkansas River & Western Railroad Company? A. I was.

"Q. And took part in the proceedings? A. Yes, sir.

"Q. You may state now whether at that time any order or instruction, verbally or otherwise, was given to the county clerk to make the subscription to the capital stock of that company. A. My recollection is, that there was. It was this way: We got together for the purpose of canvassing the votes which had been cast at that election. After we canvassed the vote, Mr. Hays asked the question, if it was right for him to subscribe the stock, and Mr. Wilbur told him that it would be all right; to go ahead and subscribe the stock.

"Q. The board was in session at that time? A. Yes, sir.

"Q. What was the custom of doing business by the board at that time? A. The usual custom was to talk over matters together, and if there was no difference of opinion existing among the members of the board, there was no vote taken; the county clerk simply took down the minutes of the proceeding, and made up his journal that way.

"Q. And when one of the commissioners told the clerk what to do, and the others said nothing, it was usually done? A. Usually so; sometimes we all told him what to do.

"Q. And if nobody demurred, it would be considered it would be the order of the board? A. Yes, sir."

Robert M. Blair testified that he was a member of the board of county commissioners prior to September, 1885, and was present at the canvass of the vote; that he heard the clerk speak to Mr. Dewey, the chairman, and ask him if he was satisfied; that Dewey said, "Yes, and that as the result is the wish of the people, it satisfies me;" that Wilbur said to the clerk, "The next thing to do was to subscribe for the stock."

T. F. Halverson testified that he was the county attorney of Stafford county at the time of the canvass of the vote; that he was before the board in the afternoon of the day of the canvass; that in the presence of the members of the board, while in session, the clerk told him the board had directed him to make the subscription of the stock.

The only evidence of importance conflicting with the foregoing is the testimony of McCoomb, one of the members of the board, and C. S. Mace, sheriff of Stafford county at the time of the canvass. McCoomb testified he did not hear any order or direction given to the clerk to subscribe any stock, and to his knowledge nothing was said or done at the time of the canvass, by the board or any of the members, concerning the subscribing of stock. Mace testified he was present at the meeting of the board at the time of the canvass, and did not hear of any action being taken by the board regarding the subscription.

Under the statute, which differs from the one cited in *Land Grant Railway v. Comm'rs of Davis Co.*, 6 Kas. 256, it was the duty of the board upon the canvass of the election returns, after ascertaining that the proposition voted on had been carried, to order the county clerk to make the subscription. (Comp. Laws of 1879, ch. 84, § 72.) The clerk, acting as a public officer, did make the subscription. The evidence largely preponderates that he made this subscription under the order of the board of commissioners. The board was in legal session at the time of the direction to the county clerk, and the mere inattention or forgetfulness of one of its members as to what was actually done, ought not to defeat the subscription. "Whenever there is a legal session, unquestionably a majority of the commissioners can act and bind the county." (*P. & F. R. Rly. Co. v. Comm'rs of Anderson Co.*, 16 Kas. 302.) The evidence of both McCoomb and Mace is of a negative character, and is largely overthrown by other witnesses who testified positively. The law esteems the latter class of evidence more highly, and of more value than the former. (*Railroad Co. v. Lane*, 33 Kas. 702.)

Upon the evidence presented, our conclusion is, that the subscription for twelve hundred and eighty shares of the capital stock of the Arkansas River & Western Railroad Company, made by the clerk of Stafford county on October 31, 1885, in the name of that county, is valid.

It is next insisted that the plaintiff is not entitled to the

bonds sued for, upon the ground that there has been no legal consolidation of the Arkansas River & Western Railroad Company with the Chicago, Kansas & Western Railroad Company. The objections alleged to the consolidation are numerous. This is not the time, however, to consider these objections. The law authorizes railroad companies to consolidate. This law was in force at the dates of the election and subscription to the stock of the Arkansas River & Western Railroad Company, and such subscription was made under the express provision of the law that the company might consolidate with other companies at the instance and approval of stockholders representing two-thirds of all the stock held in each company or road so consolidated. (Laws of 1870, ch. 92, § 1.) The mere consolidation of one railroad company with another company since the taking effect of the act of 1870 will not discharge or release a non-assenting subscriber of stock. (*Railroad Co. v. Comm'rs of Phillips Co.*, 25 Kas. 261.) Subsequently the legislature authorized any corporation organized or existing under the general statutes of the state to amend its charter in any of its parts when authorized by a two-thirds vote of the stockholders of the corporation. (Laws of 1886, ch. 62, § 1.)

As the plaintiff is a *de facto* corporation, under the decisions of this court its existence as such corporation can only be attacked in a direct proceeding brought for that purpose; such a matter will not be inquired into collaterally. (*Reisner v. Strong*, 24 Kas. 410; *Railroad Co. v. Wilson*, 33 id. 223; *Pacific Railroad Removal Cases*, 115 U. S. 1–15.) In this connection, however, it is best to say that the provisions of the statute by unavoidable implication show it is not prerequisite that all the capital stock of a corporation be subscribed before it is organized; for instance, all corporations are organized in this state under general laws; the existence of a corporation dates from the time of filing its charter. If the full amount of the capital stock is not subscribed at the time the charter is filed, the directors within three months thereafter

2. Corporation; existence, not to be attacked collaterally.

3. Existence, begins when.

Rush, *Adm'x*, v. Mo. Pac. Rly. Co.

are required to open books for receiving subscriptions to the stock of the corporation; the capital stock unsubscribed may be disposed of by the directors in such manner as the by-laws prescribe. (Comp. Laws of 1879, ch. 23, art. 2, § 10; id., art. 3, §§ 16, 23; *Hunt v. Bridge Co.*, 11 Kas. 412.)

The case of *The State, ex rel., v. Comm'rs of Nemaha Co.*, 10 Kas. 569, cited to show that consolidation of railroad companies is a good defense for a county to refuse to issue bonds in payment of its subscription to one of the old companies, is inapplicable, for the statute at that time authorizing consolidation, expressly reserved to each stockholder of the original companies the right to determine whether he would become a stockholder in the new corporation.

The peremptory writ of mandamus will issue as prayed for.

All the Justices concurring.